UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ALANA WALKER,

Plaintiff,

**COMPLAINT**

-against-

***Jury Trial Demanded***

UNITED STATES DEPARTMENT OF HOMELAND
SECURITY and ALEJANDRO MAYORKAS,

Defendants.

---------------------------------------------------------------X

Plaintiff ALANA WALKER, by and through her attorneys, the BELL LAW GROUP PLLC, respectfully alleges, upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

1.  Plaintiff Alana Walker, a female, was hired by the United States Department of Homeland Security (the "Agency") as a Federal Air Marshal ("FAM") on October 30, 2016. Ms. Walker has always reported to the Agency's New York Field Office.

2.  On October 1, 2019, Ms. Walker began a detail as a Transportation Safety Administration ("TSA") Investigator, assigned to work in Miami, Florida. The TSA detail position was more prestigious than Ms. Walker's FAMs position and was a steppingstone for future advancement within the Agency.

3.  When Ms. Walker first started her detail she worked "light duty" because she was still nursing her first child. While working light duty, Ms. Walker fully performed her required job duties and was able to work remotely.

4.      On July 15, 2020, Ms. Walker informed her supervisor, Special Agent in Charge Charles Lunsford ("SAC Lunsford") that she was pregnant. Ms. Walker was ecstatic about her pregnancy was and excited to tell SAC Lunsford, with whom she had a cordial and professional relationship. To Ms. Walker's surprise, Mr. Lunsford expressed complete shock upon hearing the news, and his entire demeanor changed.

5.      On July 22, 2020, Ms. Walker held a virtual meeting with SAC Lunsford, Assistant Director for East Coast Investigations Daniel Suttles ("Suttles") and Business Management Advisor Keisha Boney ("Boney"). During the call, SAC Lunsford abruptly informed Ms. Walker that due to her pregnancy, her TSA detail was being terminated, and she was being referred back to her position out of FAMS New York.

6.      SAC Lunsford incorrectly alleged that Ms. Walker was unable to perform her job duties under her TSA detail because there was no light duty available in her position. However, this was clearly not the case, as Ms. Walker had worked light duty for more than three months when she first commenced her detail. Accordingly, the Agency's decision to terminate Ms. Walker's detail due to her pregnancy was discriminatory and without any justification.

7.      Ms. Walker was devastated by the termination of her detail, as it spelled the end of her advancement within the Agency, and made her fearful for her future. She was no longer comfortable working in an environment permeated by pregnancy and gender discrimination.

8.      As more fully set forth below, the Agency unlawfully discriminated against Ms. Walker on the basis of her gender and pregnancy and created a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pregnancy Discrimination Act of 1978 ("PDA").

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 & 1343.

9.      Venue is proper in this case pursuant to 28 U.S.C. § 1391 because (1) the Agency's New York Office is located in Queens County, New York, which is located in the Eastern District of New York, and (2) Ms. Walker was assigned to work out of and reported to the Agency's New York Field Office, which is located in the Eastern District of New York.

10.     All conditions precedent to filing suit have been fulfilled. On August 31, 2020, Ms. Walker timely contacted the Agency's EEO counselor to report the discrimination (See EEO counselor's report attached as Exhibit A). On September 8, 2020, Ms. Walker held an initial interview with an EEO counselor to discuss her claims.

11.     On September 23, 2020, Ms. Walker timely filed a formal complaint of discrimination with the Agency ("Formal Complaint") (See Formal Complaint annexed hereto as Exhibit B). On September 30, 2020, Ms. Walker's complaint was accepted by the Agency for the investigation. (See acceptance letter annexed hereto as Exhibit C).

12.     On or about February 3, 2021, Ms. Walker filed a request for a hearing before an administrative judge. (See hearing request annexed hereto as Exhibit D). The case assigned to Administrative Judge Neile F. Eisner.

13.     On May 24, 2021, Judge Eisner dismissed Ms. Walker's case so that Ms. Walker could file a complaint in federal court. (See May 24, 2021 Order annexed as Exhibit D). The Agency never issued a Final Agency Decision in this matter.


## PARTIES

14.     Plaintiff ALANA WALKER is a female, who is a current resident and domiciliary of Miami, Florida. At all times relevant to the complaint, Ms. Walker was an "employee," of the Agency as that term is defined by Title VII and the PDA.

15.     Defendant Agency is a federal Agency of the United States with its New York Field Office located in Queens County, New York. At all times relevant to the complaint, Defendant Agency was Ms. Walker's "employer," as that term is defined by Title VII and the PDA.


## FACTUAL ALLEGATIONS

### *Background*

15.     Ms. Walker was hired by the Agency on October 30, 2016 as a FAM. Ms. Walker has always reported to the Agency's New York Field Office.

16.     In October 1, 2019, Ms. Walker began a detail as a TSA Investigator, assigned to work in Miami, Florida. The TSA detail position was more prestigious than Ms.

Walker's FAMs position and was a steppingstone for future advancement within the Agency.

17.   When Ms. Walker first started her detail she worked "light duty" because she was still nursing her first child. While working light duty, Ms. Walker fully performed her required job duties and was able to work remotely.

18.   After Ms. Walker finished nursing and before her pregnancy, Ms. Walker had a great relationship with her supervisors and co-workers. Ms. Walker was consistently commended for her excellent job performance while working on light duty and while working remotely.

19.   At no point in time during her light duty assignment was Ms. Walker told that she was not performing her job duties to the Agency's satisfaction.

### Termination of Ms. Walker's Detail Due to Her Pregnancy

20.   On July 15, 2021, Ms. Walker was excited to tell SAC Lunsford that she was pregnant. She had a close working relationship with him and expected him to be happy for her.

21.   On July 15, 2021, Ms. Walker called SAC Lunsford to tell him that she was pregnant.

22.   Rather than act happy for Ms. Walker, SAC Lunsford acted shocked and surprised, and his entire demeanor towards Ms. Walker changed.

23.   On July 21, 2021, SAC Lunsford informed Ms. Walker that she was to attend a virtual conference call on July 22, 2021.

24.   On the July 22, 2021 call, Ms. Walker expected a discussion regarding normal work matters. However, she was surprised to find Suttles and Boney on the call.

25.   During the call, SAC Lunsford informed Ms. Walker that her TSA detail was being terminated immediately, despite her excellent job performance and clear qualifications for the position.

26.   SAC Lunsford explicitly stated that Ms. Walker's pregnancy warranted the termination of her detail.

27.   SAC Lunsford, who is a male, made the decision to terminate Ms. Walker's detail.

28.   SAC Lunsford's decision was approved by the Agency.

29.   SAC Lunsford incorrectly claimed that light duty was not an option for a FAM on TSA detail.

30.   Ms. Walker objected to the termination and requested clarification regarding her new job assignment but no clarification was forthcoming.

31.   Ms. Walker reached out to her colleagues in the New York Field Office, who expressed shock and dismay at the decision.

32.   Ms. Walker's detail was ultimately terminated, and she resumed her work strictly as a FAM reporting to the New York Field Office.

33.   Ms. Walker's termination was improper, as she had worked light duty at the commencement of her detail in October 2019 and fully performed her job duties.

34.   As a result of the termination of her detail, Ms. Walker's career was irreparably harmed as her development within the Agency was destroyed.

35.   Further, Ms. Walker suffered severe emotional distress stemming from the realization that she was being discriminated against simply because she made the decision to have a child and grow her family. This clear discrimination created a

hostile work environment which rendered any return to a TSA detail in Miami untenable.

### *Disparate Treatment Based Upon Gender and Pregnancy – EEO Interviews*

36. Ms. Walker is aware that male FAM's on TSA details were afforded the ability to work light duty.

37. SA Gregory Carmack, Ms. Walker's similarly situated male co-worker who reported to the same chain of command, was on a light duty assignment for between 4 and 6 weeks in July 2020.

38. On November 18, 2020, SA Carmack signed an affidavit attesting as much during the EEO investigation into this case.

39. SA Carmack attested that he assumed that Ms. Walker would simply be placed on light duty when she was pregnant.

40. Specifically, SA Carmack attested that based upon his observation and experience, Ms. Walker was discriminated against on the basis of her gender and pregnancy when the Agency terminated her detail.

41. SA Rodolfo Martinez signed an affidavit for the EEO investigator on November 19, 2020.

42. In his affidavit, Mr. Martinez testified that Ms. Walker could have performed light duty work while pregnant, such as interviews and other remote tasks, especially since during Covid there was minimal travel.

43. Mr. Martinez also testified that he was aware that male FAMs on TSA detail, including SA Carmack, were afforded light duty, and did not understand why Ms. Walker was not being offered the same opportunity.

44.     Mr. Martinez stated, under oath, "I do believe it was unfair that she was removed from Investigations after she notified management that she was pregnant."

45.     Mr. Martinez further stated that "I questioned why there was light duty available for a male agent, but not for her, just because she was pregnant. The only difference between the two was that one was male and the other was female."

## CLAIMS FOR RELIEF

50.     In terminating Ms. Walker's TSA detail and subjecting her to further harassment, the Agency discriminated against her on the basis of her gender and pregnancy in violation of Title VII and the PDA and created a hostile work environment.


**WHEREFORE,** the Plaintiff demands judgment against the Defendant for all compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, liquidated damage, injunctive relief,  and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that the Court grant the Plaintiff any other relief to which she is entitled, including but not limited to:

1.      Awarding reasonable attorneys fees and the costs and disbursements of this action;

2.      Granting such other and further relief that to the Court seems just and proper.

**Further,** Plaintiff demands a trial by jury.

Dated: Garden City, New York
      August 2, 2021

*Paul Bartels*
Paul Bartels, Esq.
Bell Law Group PLLC
*Attorneys for Plaintiff*
100 Quentin Roosevelt Blvd., Suite 208
Garden City, NY 11530
(516) 280-3008 phone/ (516) 706-4692